Good morning. May it please the court, my name is Jim Watson and I'll be representing the appellant, Wayne Marshall. With the court's permission, I'd like to reserve two minutes of my time for rebuttal. This case requires the court to apply the categorical approach to California Vehicle Code Section 2800.2 to decide whether it's a crime of violence for career offender purposes. 2800.2 makes it unlawful for a driver to elude a police officer while driving with willful or wanton disregard for the safety of persons or property. In the district court, there wasn't any dispute that this was not a categorical crime of violence, but the government, for the first time on appeal, argues that it is, so I'll address that argument first. The government's argument is based on the catch-all definition for crime of violence, which covers conduct that involves, presents a serious potential risk of physical injury to another. This court's categorical inquiry begins and ends with the plain language of Section 2800.2, because that language shows that it covers conduct outside of this catch-all definition. In fact, there are two completely different ways that 2800.2 is broader than the catch-all definition. First, the plain language of the statute provides it can be a defendant's disregard for safety concerned only property or his own physical safety. In fact, under subsection B, showing of any property damage whatsoever is sufficient to show the wanton disregard element. But the catch-all crime of violence definition requires showing potential serious risk of physical injury to another person. So for that reason alone, 2800 is not a categorical crime of violence. The second reason the statute's not a categorical crime of violence also involves subsection B, which permits the wanton or willful disregard for the safety of persons or property to be shown merely by showing that three relatively minor non-dangerous vehicle code violations occurred. Do you have any cases where anybody's ever been prosecuted under that theory? I know you argued strenuously in your brief that it could be based on the failure to lower your high beams and making an improper left turn or whatever. But do you have any cases where somebody's been prosecuted under 2800.2 on that theory? Yes, Your Honor. In fact, I think that the cases we cited in the reply brief demonstrate that, in common sense, we suggest that this provision plays a role in almost every 2800.2. If you're arresting somebody for felony eluding or flight, whatever you want to call it, they're clearly going to be engaging in multiple violations of the California Vehicle Code. It would be difficult, I would think, to be running from the police and not be violating all kinds of vehicle code provision. But I'm asking you the specific question of do you have a case where somebody was convicted under 2800.2 for not clicking the high beam to the low beam? I mean, what I would call a relatively minor violation of 2800. Well, Your Honor, I can't go that far. I can't say that I can find one that has those particular vehicle code violations. I will point to... That was kind of the answer I expected. Then my follow-on question is, didn't the Supreme Court tell us in... What is it? Quintus Alvarez. Yeah, that we can't do what we lawyers and judges love to do and sort of spin out all these hypotheticals unless we can actually point to the fact that in this case or in other cases where the statute has been applied, that it's been applied in that way. Well, Your Honor, I don't think that the Supreme Court cases have to be read exactly that way. And I think that this Court's own case, subsequent en banc cases in Griselle and Vidal kind of explained how the categorical approach changes after Duenas, Alvarez, and James. And what they did is they pointed to the language in James saying we can't engage in legal imagination. And they said, the en banc cases said, where the plain language of the statute, if you're just looking at the elements of the statute, if that covers conduct outside the generic definition, we're not engaging in any legal imagination. And therefore, the plain language ends the analysis in Vidal. But in Griselle in particular, the Oregon burglary statute, the statute was written in a way and there were reported cases where people had been convicted for burglarizing fishing vessels, breaking into storage lockers, that sort of thing. Your situation is a little different. You can look at the language of the statute, but you can't cite to me a case where anybody's ever been convicted of 2800.2 for relatively minor CVC violations. Well, I can point to Peoples v. Pinkston, which is the case cited in the briefs where the government or the state, and I think they do this in every 2800.2 case, and that's why I think that the vehicle code violations is always a part of the ordinary case. They argued to the jury both theories. And the Pinkston case reflects that the jury came back with a very specific note. Can we find him guilty based solely on the three vehicle code violations? The jury said yes, and the court said yes, as it's required for 2800.2B. What were the three vehicle code violations in Pinkston? It looks like there were several instances of going through a stop sign and several instances of speeding. Okay. Which one would expect if one was engaged in flight from the fleet. Right. In that scenario, those were the kinds of things that came up. But I think that the court's focus shouldn't be on that initially, and I think that the reason why is there's a big difference between the cases that were presented in Duenas-Alvarez and James and the cases that this court dealt with in Grizzell and Vidal. What's bothering me about the argument is that the statute seems to be a paradigm of criminalizing conduct that we would instantly recognize from the O.J. Simpson tape, showing him speeding down the freeway in the white SUV. That's kind of the typical 2800.2 flight case. And in this case, and maybe now I'm moving to the modified categorical approach, we have your client's concession that he drove recklessly while fleeing from a uniformed police officer, which, again, it seems to me within the heartland, if I can use the guidelines term, of that kind of a violation. Well, Your Honor, I don't know if you want to go into the modified categorical approach yet, but with regard to what he said about recklessly, I would say that recklessly, particularly given the considerable evidence we've shown what the state court practice was, just the shorthand way to refer to 2800.2 is by saying something like driving recklessly, reckless evasion. And so by using recklessly, all he's doing is he's saying he's identifying the element of wanton or disregard for the safety of persons or property. Which is reckless driving under California Vehicle Code, is that right? Yes, that is true, but also under subsection B of 2800.2, recklessness can be shown by three vehicle code violations. So the point is that the word recklessness is no more than a substitute of the words wanton and disregard for the safety of persons and property. And for the purposes of that statute, that element can be proved under subsection B. Would you concede that a reckless driving charge would be a crime of violence within the definition of the sentencing guidelines? No, and that's for the alternative reason that even if you forget about subsection B, even if you believe that never existed, you still have in subsection A a requirement that it would be a willful or wanton disregard for the safety of persons or property. But isn't the definition of reckless driving almost verbatim what you just said? Driving in willful and wanton disregard. Right, and that's what I'm saying. But the key thing is persons or property. The key definition for the purposes of the career offender guidelines says that there has to be a serious potential risk of physical injury to another person. Counsel, your time is almost up. I wanted to ask you if you were familiar with a recent decision of this court in... Jennings? Jennings, yeah. Yes. And how does that bear? I think it's very applicable here, Your Honor, because it deals with the Washington's Eluding and Please statute, which is the same statute that was dealt with in Kelly, which is also very applicable here. If you look at the statute in Washington and Part A of the statute here, 2800.2A, they use very similar language. The difference between what the court did in Jennings and Kelly and what it needs to do here is in Kelly, it had to look at Washington state law to say how has this been interpreted. And it said it's been interpreted so you don't even have to show any kind of danger. And that's what the opinion rested on. Here you don't even need to do that because you can look right at the Subsection B itself, which that says that this statute can be violated. I'm not quite sure I understand. You're arguing that Jennings is not controlling here? No, I think it is controlling. It is. But given that here we have the court can look to the plain language of the statute itself instead of case law interpreting the decision. Okay. I think this makes it even stronger. Okay. Thank you. Thank you. You have about five seconds left. If you want to say something briefly on rebuttal, you may. May it please the court, Daniel Levin for the government. This conviction qualifies as a crime of violence under both the categorical approach and under the modified categorical approach. And let me start with the categorical approach and briefly just Jennings. I think this case is quite distinguished from the California statute, from the Washington statute and Jennings. Section A of the California statute has the willful and wanton disregard language that is similar to the language in the Washington statute. But contrary to the Washington statute, which the court in Kelly held didn't meet the test for the crime of violence, prior to amendment this court had held that the California statute did, was a crime of violence under an aggravated felony, I'm sorry, under 16B in Campus Fuerte. And prior to amendment the California Court of Appeals had held that the was inherently dangerous to life, qualified under the felony murder rule. So when you compare apples to apples, the section A of this statute to the Washington statute, the willful and wanton language had been interpreted by the state courts very differently. So what we're left with here is the broadened California statute with the section B, which has the three infractions and the actual damage to property. And that is different from the Washington statute. So I don't think Jennings really binds this court in any way. I think we have to look to the broader California statute, the broadening language in the California statute, and ask whether in the ordinary case this is going to create that serious potential risk of physical injury, and then the burden would shift to the defendant to show a case that, in fact, it didn't create that risk. And when we look at the cases that are cited in the briefs, let's start with Pinkston, the California case, which does involve, the jury is instructed on the three infractions. Those infractions, and they're described by the court, the defendant is driving 60 miles an hour in a residential zone. Then he runs a stop sign. Then he runs a red light. Then he runs another stop sign. Then he's driving 60 miles an hour again. It's a whole string of dangerous driving. At some point, the defendant goes over a speed bump, and the convertible top of his vehicle flies off. So this is driving that is more than three infractions, and it creates a very serious potential risk of physical injury. The same is true, I think, in the defendant's reply brief. He cites about five or six cases where the jury had been instructed on the three infraction rule, and every single one of those cases, when they describe the driving, the infractions that are going on are speeding, driving on the wrong side of the road, running red lights, running stop signs, cutting across traffic. This is dangerous contact, and that is the prototypical types of infractions that happen under this statute. I haven't seen, and I'm not aware of, any case in which the three infractions are three infractions that don't create that serious potential risk of physical injury. I can see that it is theoretically possible that we could come up with a list of three infractions that don't create that risk, but I haven't ever seen a case, and the defendant hasn't. Aren't we sort of stuck with the Kelly case, and the Jennings case makes it clear that Judge O'Scanlan disagrees with Judge Tashima about what the Kelly case means, but the fact that this defendant apparently in open court said he was driving recklessly in a plea colloquy or something, does that supply an element that is missing in this case? I think you're asking about the modified categorical approach. Well, I don't see how you can score on a categorical approach here because of the Kelly case. Well, let me first address the categorical case and then move to the modified categorical. I think this is different from Kelly because this statute, although it has that same willful and wanton language that the Washington statute has, that language, Kelly looks at Washington law and says that language, the willful and wanton language in the Washington statute, only requires conduct from which we can infer something about a defendant's mental state, and that's not enough to meet the test for a crime of violence. In California, that willful and wanton language in Section A of the California statute, that language has been interpreted prior to this broadening amendment in California. It's been interpreted by this court to be an aggravated felony. It's been interpreted by the California courts to satisfy the requirements for the felony murder rule, which require a showing of inherent dangerousness, a high probability of death, is what the California Supreme Court has said about the felony murder rule. So that willful and wanton language in California means that there has to be conduct that creates a high probability of death, and that's a much higher standard than the Washington courts looking at the willful and wanton language in Washington have interpreted. So I don't think that Kelly and Jennings control here, because when you compare willful and wanton language in both statutes, the state courts have actually interpreted those quite differently. So I think we can get beyond Jennings and Kelly in this case, and I don't think they control on the categorical approach. Now, with respect to the modified categorical approach, I think here when we look at the plea agreement, defendant admits that he evaded the marked police car while driving recklessly, and it's in the facts section of the plea agreement. It says these are the facts that you're admitting to, and I think the best reading of that language is the plain language. That's how we read plea agreements. I grant that state courts and state court practitioners sometimes refer to this statute as recklessly evading or evading while driving recklessly. It's a shorthand, but it's a descriptive shorthand. It's because that's what's going on when this statute is violated. So the fact that there's a lot of cases, and I agree that there are a lot of cases, using recklessly to kind of describe this statute, that doesn't mean that when defendant, who's not a frequent participant, who's not a frequent flyer on the state court system, when he says I was driving recklessly, we should take that at face value. We don't read plea agreements to ascribe to a defendant some technical, some jargony, some shorthand way of looking at words. That would be unfair to defendants to say what you really meant was what state court practitioners throw around in court every day. Driving recklessly isn't a difficult term. It means driving dangerously, driving in a way that you're out of control, where you could create a harm to someone. So I think when we just look at what the defendant admitted in the written plea agreement, it's pretty clear that the defendant was driving in a way that created a serious potential risk of physical injury to someone. Any further questions? Thank you. Thank you, counsel. Very briefly. I just want to respond to the government's point that the focus is that when Mr. Marshall used the word recklessly, he's not using the state vernacular. Obviously, he's writing down what his lawyers tell him. In fact, it looks like the lawyer wrote down the plea statement. So to say that he's using that word in anything other than the state court vernacular is kind of out of the question. And I would point the court to footnote 27 in the Vidal case, where the court did exactly what I'm asking the court to do here, and that is it looked to state court practices, as shown in the state court opinions, to determine what the state court practice is and how it should then interpret something for purposes of the modified categorical approach. I have nothing else except to ask, based on Your Honor's last question, has the court received my plenary letter? Yes, we have. Thank you. Thank you. All right. The case just argued is submitted. And the next case on the calendar, Chen v. Mukasey, is submitted on the briefs.
judges: Goodwin, Schroeder, Tallman